**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC UTILITY DISTRICT NO. 1 OF
PEND OREILLE COUNTY,
WASHINGTON

                                        Civil Action No. 1:06CV00365RMC

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR

Defendant.

---

**DEFENDANT/INTERVENOR KALISPEL TRIBE OF INDIANS' REPLY IN**
**SUPPORT OF MOTION TO DISMISS**

---

**INTRODUCTION**

Plaintiffs Public Utility District No. 1 of Pend Oreille County, Washington ("PUD")

and Ponderay Newsprint Company ("PNC") do not dispute that pursuant to 16 U.S.C. §

825*l*(b), the courts of appeals have exclusive jurisdiction over all challenges to the terms and

conditions of hydropower licenses issued under the Federal Power Act ("FPA"), including

the procedures used to impose those terms and conditions.  Nor do plaintiffs dispute that it

was the intent of Congress to preclude fragmented appeals from Federal Energy Regulatory

Commission ("FERC") licensing decisions.  Instead, plaintiffs seek to radically redefine the

nature of the claims asserted in this action, which they now characterize as a "generic"

challenge to a regulation of "general applicability," 43 C.F.R. § 45.1(d)(1), promulgated to

implement section 241 the Energy Policy Act of 2005 ("EPAct").  *See, e.g.*, *PNC Response* at

1

11; *PUD Response* at 9.  Plaintiffs' respective complaints, however, betray their newfound

carefully-crafted rhetoric and leave no doubt that plaintiffs are in fact challenging the

Department of Interior's ("Interior") interpretation of section 241 *only as applied* by Interior

*to plaintiffs as part of the FERC licensing process* and only because plaintiffs object to the

underlying license conditions imposed by Interior.  This challenge to the conditioning

procedures applied by Interior in a specific licensing proceeding that resulted in specific

license conditions falls squarely within the jurisdictional scope of § 825*l* and precludes

district court review under the Administrative Procedures Act ("APA").

## ARGUMENT

A.    <u>Section 825*l* Encompasses Plaintiffs' Claims Challenging Interior's Interpretation and
      Application of Section 241 in the Box Canyon Project License Proceeding and
      Precludes APA Review</u>

APA review of course is only available for "final agency action for which there is no

other adequate remedy in a court[.]"  5 U.S.C. § 704.  Fatal to their claims in this court, both

the PUD and PNC have already affirmatively placed the same procedural claims before

FERC in their license rehearing petitions, the prerequisite to court of appeals review under §

825*l*(b).  *See* 16 U.S.C. § 825*l*(a).  Both argue that section 241 of the EPAct entitled them to

trial-type procedures in connection with the imposition of mandatory license conditions.  For

example, the PUD notes in its complaint before this Court:

> The District immediately sought to have the provisions of Section 241 apply to the Box
> Canyon Project relicensing proceeding.  On August 10, 2005, two days after the EPAct
> was enacted, the District filed at FERC a Request for Rehearing of the licensing Order.
> As part of its Request for Rehearing, the District requested that FERC reopen the
> record to apply the EPAct . . . .

*PUD Complaint* at ¶ 33.  PNC has sought the same relief from FERC.  *PNC Complaint* at ¶

28.  Plaintiffs seek this trial-type hearing in order to attack the substantive conditions

2

imposed by Interior.  For example, plaintiffs intend to dispute "Interior's factual assertions

about whether the river affected by the Box Canyon Project was historically a cold or warm

water fishery and whether certain species of fish have historically been found in the affected

river reaches" and to demonstrate "that several of the factual assertions upon which Interior

is relying to impose burdensome and expensive license conditions are erroneous and

unsupported, and that such conditions are not necessary or appropriate to mitigate any effects

the Box Canyon Project is responsible for."  *PUD Complaint* at ¶¶ 39, 44; *PNC Complaint* at

¶¶ 34, 39.

      Having challenged Interior's interpretation and application of section 241 under the

FPA statutory review process in their rehearing petitions before FERC – the agency

"responsible for compiling the record for the benefit of the court of appeals" under § 825*l* –

plaintiffs should not be heard to demand collateral APA review based on the absence of an

adequate remedy in the court of appeals.  *Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659,

663 (D.C. Cir. 1996).[1]  It is telling that neither the PUD nor PNC ever assert that they would

not have a full remedy for their grievance through review by the court of appeals under §

825*l*.  And for good reason – as discussed below in part B, courts of appeals routinely review

under § 825*l* the statutory interpretations and applications made by agencies in the course of

an FPA licensing proceedings.  Moreover, the plain language of § 825*l*(b) extends exclusive

court of appeals jurisdiction to "[a]ny party to a proceeding under this chapter aggrieved by

an order issued by the Commission in such proceeding . . . ."  Plaintiffs leave no question that

---

[1]  The fact that Interior would be the real party in interest before the court of appeals in an
action pursuant to § 825*l* challenging Interior's application of the EPAct to plaintiffs is
hardly remarkable.  *See, e.g., Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659, 661-62 (D.C.
Cir. 1996) (FERC is appropriate respondent under § 825*l* even if Interior is real party in
interest with respect to actions of Interior in connection with license order).

they are aggrieved by FERC's order of July 11, 2005, which incorporates the Interior license conditions disputed by plaintiffs and crafted without the procedures plaintiffs seek to compel. *See, e.g., PUD Complaint* at ¶¶ 25-26, 45; *PNC Complaint* at ¶¶ 19-21, 40.

In a transparent attempt to escape the exclusive jurisdiction of § 825*l*, plaintiffs' briefs present a case that bears little resemblance to the case actually filed. For example, PNC characterizes 43 C.F.R. § 45.1(d)(1) and its legal challenge to that rule as "generic" more than twenty-five times. Notably, the word "generic" appears not once in either the PUD's or PNC's complaint. Were the PUD and PNC mounting a generic facial challenge to 43 C.F.R. § 45.1(d)(1), they would have the burden to "establish that no set of circumstances exists under which the [regulation] would be valid." *Reno v. Flores*, 507 U.S. 292, 300-01 (1993) (citations omitted); *see also Babbitt v. Sweet Home Chapter for a Great Oregon*, 515 U.S. 687, 699-700 (1995); *INS v. National Ctr. for Immigrants' Rights*, 502 U.S. 183, 188 (1991). However, plaintiffs do not claim that the rule is invalid under all circumstances, nor could they – the rule affords to a vast class of parties the very trial-type procedures plaintiffs seek.[2] Plaintiffs only dispute the rule's implicit exclusion of plaintiffs from the class of parties eligible for those procedures and Interior's independent decision not to afford those procedures to plaintiffs in the Box Canyon Project license proceeding. Thus, plaintiffs' challenge is in no way a generic facial one. Rather, plaintiffs plainly challenge Interior's

---

[2] The regulation provides: "This part applies to any hydropower license proceeding for which the license has not been issued as of November 17, 2005 and for which one or more preliminary conditions, conditions, preliminary prescriptions, or prescriptions have been or are filed with FERC." 43 C.F.R. § 45.1(d)(1).

interpretation of section 241 *as applied to them* by Interior in the course of the FERC

licensing proceeding.[3]

PNC, recognizing that plaintiffs' complaints are inconsistent with their present

arguments, now seeks to disavow the allegations of those complaints.  PNC states,

"Whatever the particular language contained in the Complaints, the gravamen of their claims

is a challenge to an independent, generic, generally-applicable rule . . . ."  *PNC Response* at

16.  This assertion, however, is flatly contradicted by both the PUD's and PNC's complaints.

One need look no further than the first paragraph of each:

> More specifically, PNC requests that this Court hold unlawful and set aside Interior's
> regulations and decisions *that have denied PNC* a trial-type hearing and the other
> statutory requirements of Section 241 of the Energy Policy Act of 2005 ("EPAct"); and
> *declare that PNC has a right to a hearing*, to propose alternative conditions and
> prescriptions, and *to have applied* to the Box Canyon Project license the other
> provisions of Section 241.

*PNC Complaint* at ¶ 1 (italics added); *see also PUD Complaint* at ¶ 1.  Plaintiffs repeatedly

allege that the trial-type procedures of section 241 *should be applied* to the Box Canyon

Project license proceeding and that Interior acted unreasonably in failing to afford those

procedures.  *See, e.g., PUD Complaint* at ¶¶ 33, 35, 41, 49, 55; *PNC Complaint* at ¶¶ 28, 30,

36, 44, 50.

Ultimately, plaintiffs ask the Court to declare that they have a right to a trial-type

hearing and other procedural protections, not in some general prospective sense, but

*specifically as part of Interior's imposition of conditions on the PUD's hydropower license*.

*PUD Complaint, prayer for relief* at ¶ 4; *PNC Complaint, prayer for relief* at ¶ 4.  Indeed, the

---

[3]  Whether there are other parties similarly situated to the PUD and PNC, as PNC suggests
without offering any substantiating evidence, is irrelevant.  *PNC Response* at 12-13.  The
mere possibility that other parties may share plaintiffs' as-applied challenge does not convert
that challenge into a generic facial challenge.

four substantive prayers for relief in both complaints all refer specifically to Interior's denial of a trial type hearing and other procedures to the PUD and PNC. In contrast, three of the four prayers for relief fail to even mention the so-called generic regulation that plaintiffs now purport to facially challenge. Thus, the obvious gravamen of plaintiffs' claims is a challenge to Interior's interpretation of Section 241 *as applied* to plaintiffs in connection with the July 11, 2005 licensing order issued by FERC. These challenges fall squarely within the scope of §825*l*.[4]

This conclusion is further bolstered by a realistic assessment of the results of any relief that the Court could grant plaintiffs. If the Court were to hold that plaintiffs are entitled to a trial-type hearing with respect to the license conditions imposed by Interior, then the conditions already part of the FERC license would necessarily be invalidated and vacated. This, of course, is plaintiffs' true aim. There is no escaping the reality that this case is an attack on the conditions Interior imposed as part of the FERC license and no amount of artful pleading can change that fact. Such a collateral attack on a FERC license is not permitted by the exclusive review provisions of § 825*l*. *See, e.g., California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) ("[T]he practical effect of the action in district court is an assault on an important ingredient of the FERC license."). The connection between the licensing order issued by FERC that included the conditions imposed by Interior, and Interior's refusal to provide certain procedures in determining those conditions to be imposed, is undeniable. Given that nexus, § 825*l* dictates the exclusive forum to challenge

---

[4] The PUD repeatedly argues that it is not seeking to challenge the *substance* of any specific license condition in this litigation. *PUD Response* at 8-9, 12. What it is challenging, however, are *all* the conditions imposed by Interior as part of the FERC license, through its claim of Interior's failure to provide a trial-type hearing and other procedures. Section 825*l*(b) requires all challenges to FERC license decisions to be brought to the court of appeals, not merely those that challenge a specific license condition on substantive grounds.

the procedures used by Interior to set the conditions that form a part of the PUD's FERC license.

The PUD concedes that the "significant point" in the cases cited by the Tribe is that "plaintiffs were challenging actions that were taken in connection with a specific FERC licensing proceeding, and the challenged actions would not have been taken but for that specific FERC license proceedings." *PUD Response* at 10.  The Tribe agrees.  But for the Box Canyon Project license proceeding, Interior *would never have applied* its interpretation of section 241 to plaintiffs.  Plaintiffs do not contend that Interior's interpretation of section 241 and Interior's conditioning procedures have some independent force or effect on the PUD or PNC.  Rather, that interpretation, those procedures, and the resultant conditions only impact plaintiffs because they were endorsed by FERC via a specific hydropower license.  But for the license, Interior's statutory interpretation, procedures, and conditions would be meaningless to plaintiffs.  Where, as here, the effect of agency action has no force independent from a FERC license, the courts of appeals have exclusive jurisdiction.  *See, e.g., City of Tacoma v. National Marine Fisheries Service*, 383 F.Supp.2d 89, 92 (D.D.C. 2005) ("plaintiff's challenge to the Cushman Project final BiOp has no apparent significance whatever when separated from the FERC licensing order"); *Yeutter*, 887 F.2d at 912 ("conditions imposed by the Service have no significance outside the licensing process").  The PUD's purported challenge to Interior's interpretation and application of section 241 of the EPAct, rather than to the license itself, is no different than the *Yeutter* plaintiffs purported attack on the Forest Service's failure to follow the procedural and substantive steps outlined in the National Environmental Policy Act and the American Indian Religious Freedom Act.

*See Yeutter*, 887 F.2d at 911.  The Ninth Circuit rejected plaintiffs' attempt to circumvent § 825*l*, and this Court should do the same.[5]

B.    The Case Law Cited by Plaintiffs Uniformly Dictates that Court of Appeals Review is Exclusive under § 825*l*

The PNC devotes much of its brief to arguing that district court review of its claims against Interior is warranted because those claims are not "inescapably intertwined" with the FERC license order incorporating the license conditions imposed by Interior.  In *Merritt v. Shuttle, Inc.*, 245 F.3d 182 (2d Cir. 2001), the Second Circuit relied on *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958) for the proposition that "[a] claim is inescapably intertwined in this manner [and subject to exclusive court of appeals review] if it alleges that the plaintiff was injured by [an administrative order] and the court of appeals has authority to hear the claim on direct review of the agency order."  *Merritt*, 245 F.3d at 187.  In *Merritt*, plaintiff's claim did not meet this standard because his injury was not a result of an order of the agency (but a result of the actions of other agency employees) and because the claim could not reach the court of appeals through the statutory review process.  245 F.3d at 189-90.

Here, however, both conditions are plainly satisfied.  First, plaintiffs' complaints are replete with allegations that they have been aggrieved by FERC's license order, which adopted Interior's conditions and ratified the procedures by which Interior imposed those conditions.  Second, it is well-established that the courts of appeals have jurisdiction under §

---

[5]  The PNC seeks to distinguish this case as one not involving what they term "individualized input into agency adjudications."  *PNC Response* at 9.  Yet, plaintiffs' challenge is nothing more than a challenge to the procedures Interior applied to plaintiffs in the course of arriving at Interior's "individualized input".  There is no rational basis to bifurcate jurisdiction over an attack on the *substance* of an agency's conditions in a specific case from jurisdiction over an attack on the agency's *procedures as applied* to determine conditions in a specific case.

825*l* over the class of claims plaintiffs raise here.  In the seminal case of *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765 (1985), the dispute hinged upon FERC's and Interior's respective interpretations of section 4(e) of the FPA as applied to the Escondido Mutual Water Company in a specific licensing proceeding.  Similarly, in *Southern California Edison Co. v. FERC*, 116 F.3d 507 (D.C. Cir. 1997), the Court of Appeals for the District of Columbia reviewed under § 825*l* whether FERC's interpretation of section 4(e) to allow for the imposition of mandatory conditions on license renewals, as applied to Southern California Edison, was reasonable.  In both cases, plaintiffs objected not just to the substance of FERC license conditions imposed, but to the statutory interpretations and applications made by the agency in the course of imposing those conditions.  *See also Wisconsin Power & Light Co. v. FERC*, 363 F.3d 453, 462 (D.C. Cir. 2004) (ruling on challenge to interpretation and application of 18 C.F.R. § 4.34(b)(1) in connection with Interior's imposition of license conditions).  Likewise, in this case plaintiffs challenge Interior's interpretation of section 241 of the EPAct (an amendment to the FPA) as applied specifically to them.  Under § 825*l*(b), the courts of appeals have unquestioned jurisdiction to hear plaintiffs' claims that Interior failed to provide the appropriate procedures in determining the conditions to impose on the FERC license.  In fact, plaintiffs have placed those claims before FERC in the rehearing process – the prerequisite to review under § 825*l*(b).  Thus, the PUD's and PNC's claims are "inescapably intertwined" with the FERC license order that imposed Interior's conditions.

Plaintiffs' as-applied challenge also fundamentally distinguishes this case from *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849 (D.C. Cir. 2002), on which plaintiffs place great reliance.  In *Nat'l Mining Ass'n*, plaintiffs mounted a "generic" challenge to regulations promulgated by the Secretary of Labor under the Black Lung Benefits Act *before those*

*regulations had ever been applied* to plaintiffs in the course of an individual adjudication –
there was no specific agency order underlying plaintiffs' challenge. 292 F.3d at 855-57.
This was a crucial factor for the court, as reflected in its discussion of *McNary v. Haitian
Refugee Ctr., Inc.*, 498 U.S. 479 (1991), where the court referred to district court review "of
generic challenges to agency action" and "general collateral challenges to unconstitutional
practices and policies[.]"  292 F.3d at 856 (citation omitted).  The instant case presents
exactly the opposite scenario.  Despite their attempt to masquerade as such, plaintiffs do not
facially challenge a generally-applicable regulation that may have prospective consequences
to them.  Rather, they challenge the *specific application of* Interior's regulation to them and
*the actual procedures employed* by Interior in a specific licensing proceeding in which FERC
has issued a license order by which plaintiffs allege to be aggrieved.  Further, there is no
reason to believe that the PUD and PNC will not be able to receive complete relief through
court of appeals review under § 825*l*. *See Nat'l Mining Ass'n*, 292 F.3d at 857-58 (exclusive
review appropriate if plaintiffs' claims can be fully remedied in court of appeals).  Thus,
court of appeals review is appropriate.

  Nor do the other cases cited by plaintiffs support their position.  For example, in
*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), plaintiff challenged the Secretary of
Labor's interpretation of section 813(f) of the Federal Mine Safety and Health Amendments
Act and the regulations promulgated to implement that section.  *Thunder Basin*, 510 U.S. at
202-05.  Even though the Secretary had not yet enforced these provisions against plaintiff,
and even though the Secretary had not issued an order with respect to plaintiff, the Supreme
Court ruled that plaintiff's district court challenge was precluded by the Act's exclusive
review provision, providing that "[a]ny person adversely affected or aggrieved by an order of

the Commission issued under this chapter may obtain a review of such order in any United

States court of appeals . . . ." *Id.*, 510 U.S. at 208; 30 U.S.C. § 816(a)(1).  The exclusive

review provision at issue in *Thunder Basin* is virtually indistinguishable from § 825*l*(b).  Yet

in this case, the regulation that plaintiffs challenge has already been applied to them, and

FERC has already issued an order.  Thus, here the case for exclusive review is even more

compelling.

C.    Contrary to Congressional Intent, Independent APA Review of Each Agency's
      Statutory Interpretations and Regulatory Applications in the Course of a FPA License
      Proceeding Would Spawn Unlimited Collateral Attacks on a FERC License

The Tribe is unable to decipher the relevance of PNC's hypothetical scenarios.  *PNC*

*Response* at 16-17.  Plaintiffs are obviously not challenging the listing of a species as

endangered or threatened under the Endangered Species Act, the designation of a river for

protection under the National Wild and Scenic River Act, or any other agency action that has

an independent impact on plaintiffs outside a single specific FERC licensing process.

However, the challenge plaintiffs are making – that § 825*l* does not encompass a challenge to

any agency statutory interpretation or regulation *as applied* to a party *in the course of* a

FERC licensing proceeding – would plainly result in the multiplicity of actions that Congress

expressly precluded.

A hydropower license issued by FERC may incorporate mandatory conditions from

Interior (including, *inter alia*, the Fish and Wildlife Service, the Bureau of Indian Affairs,

and the National Park Service), the Department of Agriculture (including the Forest Service),

and the Department of Commerce (including National Marine Fisheries Service).  Each

agency imposes those conditions pursuant to standards and procedures outlined by

regulation.  *See* 7 C.F.R. §§ 1.601—1.674; 43 C.F.R. §§ 45.1—.74; 50 C.F.R. §§ 221.1—.74.

FERC of course has its own regulations governing the FPA application process.  *See, e.g.*, 18 C.F.R. §§ 5.1—.31.  In this action, the PUD and PNC purport to challenge the application of one such regulation – 43 C.F.R. § 45.1(d)(1).  Were each agency's application of each such regulation in the course of each FPA license proceeding subject to independent district court review under the APA, every FERC licensing order (which embodies all of those agency actions) would be hopelessly fractured and subject to collateral attack in numerous district courts.  As noted in the Tribe's opening brief at 11, this is exactly the course the PUD has pursued to date.  However, such collateral attacks are precisely what Congress intended to preclude via § 825*l*.  *See City of Tacoma*, 357 U.S. at 335-39 (Congress "necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review.").

The Tribe does not argue that a legitimate, generic facial challenge to a generally-applicable regulation by a plaintiff not party to an ongoing licensing proceeding must proceed under § 825*l*.[6]  That question is not before the Court because no such facial challenge has been mounted in this case.  Plaintiffs, currently in the midst of a rehearing proceeding regarding an existing license, challenge only Interior's *application* of a particular statute (section 241) and regulation (43 C.F.R. § 45.1(d)(1)) to them; that is, plaintiffs challenge the procedures deemed appropriate by Interior for the imposition of license conditions in the Box Canyon Project proceeding.  Section 825*l* mandates exclusive jurisdiction in the courts of appeals over challenges to the specific decisions, rules, and procedures made and applied by an agency in the course of a licensing proceeding.

---

[6]  For example, plaintiffs seeking to avoid some prospective harm that is not specific to a particular administrative order, like the plaintiffs in *Nat'l Mining Ass'n*, may not be required to mount their challenge under exclusive review provisions as an appeal to some future order.

Therefore, upon the issuance of the PUD's license order on July 11, 2005, the courts of appeals obtained exclusive jurisdiction over all challenges to the terms and conditions of the PUD's license, including the procedures used to impose those conditions. This is the only outcome that complies with the intent of Congress to avoid piecemeal litigation of FERC licensing decisions.

### CONCLUSION

Ultimately, this Court can resolve this matter by reference to the language of 16 U.S.C. § 825l(b). There is no question that the PUD and PNC are "[parties] to a proceeding under [the FPA] aggrieved by an order issued by the Commission in such proceeding" who seek to "modify, or set aside such order in whole or in part" by challenging the procedures Interior employed (or did not employ) to impose mandatory license conditions. Plaintiffs' complaints are clear on their face. While plaintiffs now purport to mount a generic facial attack on 43 C.F.R. § 45.1(d)(1), they have not done so and could not do so – that regulation has no independent impact on them outside its application to them in the Box Canyon Project licensing proceeding. Plaintiffs cannot split their challenge to the Commission's order into procedural and substantive aspects, they cannot fragment their various challenges into multiple cases before the federal district courts, and they cannot evade the exclusive jurisdictional review statute by clever pleading designed to camouflage their true ends. Congress has provided exclusive jurisdiction in a single court for the purpose of preventing multiple collateral challenges to hydropower licenses issued under the FPA. Therefore, review under the APA is precluded and the PUD's and PNC's complaints must be dismissed.

Dated this 3rd day of August, 2006.


Respectfully submitted,


/s/ RIYAZ A. KANJI_____         /s/ PHILLIP E. KATZEN_____
Riyaz A. Kanji (D.C. Bar No. 455165)        Phillip E. Katzen
KANJI & KATZEN, PLLC                        KANJI & KATZEN, PLLC
101 N. Main Street, Suite 555               100 S. King Street, Suite 560
Ann Arbor, MI 48104                         Seattle, WA 98104
Telephone:  734-769-5400                    Telephone:  206-344-8100
Fax:  734-769-2701                          Fax:  866-283-0178
Email: rkanji@kanjikatzen.com               Email:  pkatzen@kanjikatzen.com

*Attorneys for the Kalispel Tribe of Indians*